UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KHAN FUNDS MANAGEMENT
AMERICA, INC. *and* XUEFENG
DAI,

                Plaintiffs,

*– against –*

NATIONS TECHNOLOGIES INC.,
NATIONS TECHNOLOGIES (USA)
INC., SHENZHEN QIANHAI
NATIONS INVESTMENT
MANAGEMENT CO. LTD.,
ZHAOXUE LUO, YINGTONG SUN,
BAOXIN HUANG, JUNEE YU,
YAPING CHEN, HUAXIA GENERAL
PROCESSOR TECHNOLOGIES INC.,
KEYI LI, *and* DOES 1–20,

                Defendants.

**OPINION & ORDER**

22-cv-5055 (ER)

R<small>AMOS</small>, D.J.:

      Khan Funds Management America, Inc. ("Khan Funds") and its chief executive officer, Xuefeng "Eric" Dai (together, "Plaintiffs"), brought this action for civil racketeering, conspiracy, and fraud in connection with an alleged enterprise to coerce Plaintiffs into stealing American technology for the Chinese military. Doc. 35 (Am. Compl.). Defendants are Nations Technologies Inc. ("Nations") and its subsidiaries Nations Technologies (USA) Inc. ("Nations USA")[1] and Shenzen Qianhai Nations Investment Management Co. Ltd. ("Nations Investment"); Nations directors and officers Zhaoxue Luo, Yingtong Sun, and Junee Yu (a/k/a Junjie Yu); Baoxin Huang; Yaping Chen; HuaXia General Processor Technologies ("HuaXia GPT") and its subsidiary

---

[1] Nations and Nations USA are referred to herein as "the Nations Defendants."

Optimum Semiconductor Technologies ("OST")[2]; and OST Chairman of the Board Keyli "Kerry" Li (collectively, "Defendants"). *Id.* ¶¶ 21–30.

Before the Court is Plaintiffs' motion to serve the Nations Defendants, Nations Investment, Luo, Sun, Yu, and Huang, by alternative means pursuant to Federal Rule of Civil Procedure 4(f)(3). Doc. 87. For the following reasons, Plaintiffs' motion is GRANTED as to Nations Investment, and DENIED as moot regarding the Nations Defendants, Luo, Sun, Yu, and Huang.

## I. BACKGROUND

The Court assumes familiarity with the background of this case, which is described in detail in the Court's September 19, 2023 Opinion and Order. *See* Doc. 74 (denying Nations Defendants' motion to dismiss and granting OST's motion to dismiss). An abbreviated summary of relevant facts is included below.

### 1. *Plaintiffs*

Dai was born in Chongqing, China. Doc. 35 ¶ 58. In 2006, he founded Khan Funds, then based in Shenzhen, China. *Id*. Khan Funds is a hedge fund focused on investments in biomedical and pharmaceutical companies. *Id.* ¶¶ 2, 58. Khan Funds became an "industry giant" and, at its height, ran fourteen hedge funds with assets totaling over one billion dollars. *Id.* ¶ 58.

In 2014, Dai sought to expand into the American market and focus on merging U.S. healthcare, pharmaceutical, and biotechnology companies with Chinese publicly traded companies. *Id.* ¶¶ 2, 59. As part of this effort, in October 2014, he founded plaintiff Khan Funds Management America, Inc. to serve as the global headquarters for his business and the umbrella parent company to the wholly owned affiliated entities in China, Singapore, and elsewhere. *Id.* ¶ 59.

---

[2] OST has since been terminated as a party to this action. *See* Doc. 104.

Dai obtained a U.S. visa in January 2014 and moved to New York in October 2015 to run Khan Funds. *Id*. In 2017, he became a U.S. lawful permanent resident. *Id.* ¶¶ 2, 64. One of Khan Funds' wholly owned subsidiaries, Beijing Qilong Medical and Pharmaceutical Holding Co., Ltd. ("Khan Funds Beijing"), serves as Khan Funds' base in China. *Id*. ¶ 5.

2. *Defendants*

Nations is a publicly traded company, incorporated in China in 2000, and is a leader in China's information security and integrated circuit design industry. *Id.*¶¶ 3, 43. It is closely affiliated with the Chinese government, which is also one of its major clients and an indirect controlling shareholder. *Id.* ¶ 43. Nations USA is Nations' wholly owned subsidiary with a principal place of business in California. *Id.* ¶ 22. Nations Investment is also a wholly owned subsidiary of Nations located in China. *Id.* ¶ 3; Doc. 88 at 6. Luo was Nations' independent director from 2009 to 2012 and its president from 2014 to 2018, allegedly appointed to the position by top Chinese government officials because of his work in and with the Chinese military. Doc. 35 ¶¶ 23, 44–45. Sun is Nations' general manager and current president and a former delegate on the Shenzhen City National People's Congress with close ties to the Chinese government. *Id.* ¶¶ 24, 46. And Yu was Nations' chief financial officer and vice general manager from approximately 2014 to 2018. *Id.* ¶ 25.

Huang is a former Chinese cabinet-level official, who served in various roles in China's national security apparatus, and Luo's longtime friend. *Id.* ¶ 26, 61.

Chen is a semiconductor expert and founded semiconductor company Chengdu RML Technology Co. (90% of whose sales are to the Chinese military). *Id.* ¶¶ 27, 47.

HuaXia GPT is a Chinese company focused on semiconductor research in New York and China, and OST (d/b/a GPT) is its wholly owned subsidiary with a principal place of business in New York. *Id.* ¶¶ 28–29. Plaintiffs also allege OST is partially and indirectly owned by Nations. *Id.* ¶ 54. Li, OST's Chairman of the Board, is associated

3

with several other semiconductor companies and is also linked to the Chinese government and the Chinese Communist Party. *Id.* ¶¶ 30, 51–52.

### 3. The Enterprise

Plaintiffs allege Defendants are members of an enterprise to steal semiconductor research and expertise in service of the Chinese military ("the Enterprise"). *Id.* ¶¶ 47, 53 121. Luo and Sun were responsible for recruiting and managing members of the Enterprise, including Chen and Li. *Id.* ¶¶ 47, 53. Plaintiffs specifically describe Luo as the "mastermind" of the Enterprise with final authority over all its decisions, policies, and practices. *Id.* ¶ 121(i). Sun also serves as "a leader" of the Enterprise, contributing to its decisions, policies, and practices. *Id.* ¶ 121(ii). Nations, including through its subsidiaries Nations USA and Nations Investment, manages the Enterprise and orchestrates its schemes to illicitly procure protected technologies and commodities for China's use. *Id.* ¶¶ 121(iii)–(v). Yu was responsible for the day-to-day affairs of the Enterprise. *Id.* ¶ 121(vi). Huang tried to recruit Plaintiffs to the Enterprise and induce Plaintiffs to commit crimes for it. *Id.* ¶ 121(vii). Chen managed and compensated members, and he also coordinated with Nations, Luo, and Sun about retaliation and intimidation campaigns against Plaintiffs. *Id.* ¶¶ 47, 121(viii). OST serves as the Enterprise's strategic base, including management of its technical experts. *Id.* ¶ 53. Li, through OST, managed the Enterprise's New York activities. *Id.* ¶¶ 7, 121(x). HuaXia GPT serves as OST's Chinese base. *Id.* ¶ 121(xi).

### 4. The Partnership

In furtherance of the Enterprise, the Defendants solicited and financed professionals to illicitly procure semiconductor technology, including Khan Funds. *Id.* ¶ 66. Specifically, on November 23, 2015, Khan Funds Beijing and Nations Investment entered into a partnership agreement to make biomedical investments whereby Khan Funds Beijing would serve as the general and executive partner, and Nations Investment would be only a limited partner ("the Partnership"). *Id.* ¶¶ 62, 63. Khan Funds Beijing

4

had the sole and exclusive right to make independent investment and management decisions for the Partnership, and Nations Investment was expressly forbidden from participating in or interfering with the decisions.  *Id.*  Nations invested approximately $42 million in the Partnership with Khan Funds.  *Id.* ¶ 3.

Over the next two years, Defendants used fraud, threats of force, and extortion to force Plaintiffs to use the Partnership to facilitate the acquisition of semiconductor technology and to launder the proceeds of their illegal activity.  *Id.* ¶¶ 68, 72, 75. 76 78–83.  Ultimately, in meetings with Dai from September 10 to 14, 2017 in New York (which Dai secretly recorded), Luo admitted that Nations never intended to use the Partnership to invest in biomedical companies, but the Partnership was in fact a "special mission from the state" to orchestrate the Enterprise's aims of acquiring technology for the Chinese military.  *Id.* ¶¶ 78–81.

Dai refused to participate in the Enterprise and began cooperating with American law enforcement agencies.  *Id.* ¶¶ 88, 90.  In response, the Defendants began a multi-year campaign of retaliation and intimidation against him.  *Id.* ¶¶ 92–93, 100, 107–09.

5. *This Litigation and Service Efforts*

Plaintiffs brought suit against the Nations Defendants, Sun, Luo, Huang, and Yu on April 6, 2022 in New York state court for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), RICO conspiracy, fraud, defamation, prima facie tort, and civil conspiracy.  Doc. 1-1.  The case was removed to this Court on June 16, 2022.  Doc. 1.

On July 19, 2022, Plaintiffs' prior counsel, Bracewell LLP, retained the services of attorney Aaron Lukken, a service specialist.  *See* Doc. 66 ("First Lukken Decl.") ¶ 9.  Lukken, in partnership with investigators Plaintiffs retained, conducted research on the addresses of all China-based Defendants and provided his findings to Bracewell.  *Id.* ¶¶ 9, 10.

Plaintiffs amended their complaint on December 19, 2022, adding Chen, HuaXia GPT, Li, OST, and Nations Investment as defendants. Doc. 35. The Amended Complaint asserts four claims: (1) RICO violations against all Defendants, (2) conspiracy to violate RICO against all Defendants, (3) common law fraud against the Nations Defendants, Nations Investment, Luo, Yu, and Huang; and (4) violation of the Computer Fraud and Abuse Act against the Nations Defendants, Luo, and Sun. *See* Doc. 35.

Shortly thereafter, Gibson Dunn, Plaintiffs' current counsel, moved to initiate procedures under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("the Hague Convention").[3] First Lukken Decl. ¶ 15. During that time, Lukken also re-engaged with investigators to research the addresses of the newly added China-based Defendants. *Id*. Lukken related the results of that research to Gibson Dunn in February 2023. *Id*. ¶ 14.

The Nations Defendants moved to dismiss the Amended Complaint on February 17, 2023 for lack of personal jurisdiction, insufficient process, and failure to state a claim as to all four counts. Doc. 46. OST also moved to dismiss the two RICO claims (the only claims brought against it) on February 24, 2023. Doc. 53.

In the meantime, Plaintiffs continued their service efforts. Lukken received the final summons issued by the Court on March 28, 2023, and began translating it, as well as the Amended Complaint and its Appendix, all as required by Chinese authorities. Doc. 89 ("Second Lukken Decl.") ¶ 4. On April 20, 2023, Lukken submitted the Summons, FAC, and Appendix electronically via the People's Republic of China ("PRC") system to effectuate Hague Service—the Civil and Commercial Judicial Assistance System. Second Lukken Decl. ¶ 5; Docs. 89-1 to 89-10.

---

[3] Generally, Chinese companies must be served pursuant to the Hague Convention. *See* Fed. R. Civ. P. 4(f), (4)(h)(2); *Peifa Xu v. Gridsum Holding Inc*., No. 18-cv-3655 (ER), 2020 U.S. Dist. LEXIS 55452, at *37–39 (S.D.N.Y. Mar. 30, 2020).

6

In its September 19, 2023 Opinion and Order, the Court denied the Nations Defendants' motion to dismiss, and granted OST's motion to dismiss. Doc. 74. On September 25, 2023, PRC authorities rejected Plaintiffs' service requests. Second Lukken Decl. ¶ 7. In rejecting service, the PRC authorities invoked Article 13 of the Hague Convention, stating "execution of the request would infringe [on] the sovereignty or security of the People's Republic of China."[4] *Id.* ¶ 8. Following an Article 13 denial, the PRC provides no further process for Plaintiffs to undertake to effectuate service. *Id.* ¶ 11.

On November 3, 2023, a pre-motion conference was held regarding the instant motion, at which Norton Rose Fulbright US LLP ("Norton Rose") represented the Nations Defendants. Nov. 3, 2023, Minute Entry. On November 17, 2023, the Plaintiffs made the instant motion to serve the Nations Defendants, Nations Investment, Luo, Sun, Yu, and Huang, by alternative means.[5] Doc. 87. Specifically, they sought to serve each defendant through their respective U.S. counsel. *Id.* In response to the motion, the Nations Defendants, Luo, Sun, Yu, and Huang waived their objections to service and the parties stipulated to a briefing schedule for defendants' proposed motion to dismiss. *See* Docs. 90, 95, 98.

In contrast, Nations Investment has not waived its objections or otherwise consented to service, nor has it filed an opposition to the motion, which was due on December 8, 2023. *See* Doc. 84. Accordingly, Nations Investment is the only remaining defendant that is subject to the instant motion for alternative service.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 4(f) authorizes service on foreign defendants:

---

[4] Article 13 of the Hague Convention provides that a nation "may refuse to comply [with a request for service] only if it deems that compliance would infringe its sovereignty or security." Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, art. 13, Nov. 15, 1965, 20 U.S.T. 361.

[5] According to Plaintiffs, they have not yet identified an alternative means to serve Chen, HuaXia GPT, or Li. *See* Doc. 99 n.1. These parties have not yet been served.

7

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the [Hague Convention];
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice ...; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f); *see also Mattel, Inc. v. Animefun Store*, No. 18-cv-8824, 2020 WL 2097624, at *5 (S.D.N.Y. May 1, 2020) ("[Rule 4(h)] confirms that service of process on foreign corporations may be made using the same methods outlined in [Rules] 4(f)(1) and 4(f)(3), among other provisions.").

"[W]hether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *Wash. State Inv. Bd. v. Odebrecht S.A.*, 2018 WL 6253877, at *3 (S.D.N.Y. Sept. 21, 2018). Additionally, "a plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the [c]ourt may order service pursuant to Rule 4(f)(3)." *AMTO, LLC v. Bedford Asset Mgmt., LLC*, No. 14-cv-9913, 2015 WL 3457452, at *4 (S.D.N.Y. June 1, 2015).

In exercising this discretion, courts in this Circuit generally require: "(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant [such as through another subsection of Rule 4(f)], and (2) a showing that the circumstances are such that the court's intervention is necessary." *Wash. State Inv. Bd.*, 2018 WL 6253877, at *6.

### III.  DISCUSSION

#### A. Alternative Service is Appropriate Pursuant to Rule 4(f).

*1. Reasonable Attempts at Service*

In determining whether to exercise its discretion pursuant to Rule 4(f)(3) to grant alternative service, the Court first considers whether plaintiffs have "reasonably attempted to effectuate service on the defendant." *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 265 (S.D.N.Y. 2012). "[I]n cases involving service on a person residing

8

in a country that is a signatory to the Hague Convention, courts have often imposed a requirement that litigants first attempt service by means of the Hague Convention before seeking court-ordered alternative service under section 4(f)(3)." *Id*. at 266.

Here, Plaintiffs initially retained a service expert, Anthony Lukken, to investigate the proper locations to serve the various defendants in China.  First Lukken Decl. ¶¶ 9-11, 13-14.  Lukken translated and submitted the relevant files to PRC authorities on April 20, 2023, thereby utilizing Hague Convention service procedures.  Second Lukken Decl. ¶¶ 4-5; Docs. 89-1 to 89-10.  However, PRC authorities ultimately rejected Plaintiffs' service requests.  Second Lukken Decl. ¶¶ 7-8.  Plaintiffs have thus acted diligently in attempting service.

   2. *Judicial Intervention is Required*

The Court next considers whether Plaintiffs have shown that the "circumstances are such that the court's intervention is necessary." *Wash. State Inv. Bd.*, 2018 WL 6253877, at *6.  In conducting this analysis, the Court "considers the extent to which [p]laintiff has shown good faith efforts to serve [a defendant] pursuant to more traditionally reliable means of service, such that court intervention is now warranted." *SEC v. Anticevic*, 2009 WL 361739, at *4 (S.D.N.Y. Feb. 13, 2009).

As explained above, Plaintiffs have, in good faith, attempted to serve Nations Investment in compliance with the procedures of the Hague Convention.  These attempts have been unsuccessful because the PRC authorities have refused the service request. *See FTC v. Pecon Software Ltd.*, 2013 WL 4016272, at *8-9 (S.D.N.Y. Aug. 7, 2013) (finding that the "Court's intervention is warranted" because "[p]ursuant to the [Hague] Convention, the FTC has attempted to serve the Summons and Complaint on the India-based defendants via the Indian Central Authority" and "[t]hese efforts … have been fruitless" when the Authority refused the service documents and the FTC's numerous attempts to contact the Authority to obtain clarification were ignored).

9

Legal authority in this District also supports the exercise of judicial intervention. Courts have regularly ordered alternative service where, as here, a plaintiff has attempted to serve a defendant pursuant to the Hague Convention, but a country's central authority has been unable or unwilling to effect service. *See e.g.*, *Fasano v. Li*, 2019 WL 13393219 (S.D.N.Y. Dec. 10, 2019); *Arista Records LLC v. Media Servs. LLC*, 2008 WL 563470 at *1 (S.D.N.Y. Feb. 25, 2008). Indeed, at least one other district court in this Circuit has authorized alternative service when, as here, PRC authorities denied Hague Convention service under Article 13. *See Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 512 (S.D.N.Y. 2013) (granting plaintiff's request under Rule 4(f)(3) to serve China-based defendant's counsel in New York where China declined to effect service by invoking Article 13 of the Hague Convention).

Accordingly, the Court finds that judicial intervention is warranted in this case.

### B. Service on Nations' Counsel is an Appropriate Alternative Service Method

As alternative service, Plaintiffs request permission to effectuate service through Nations' U.S.-based counsel, Norton Rose. Doc. 88 at 13. Norton Rose represents that, while it is counsel to both Nations and its subsidiary Nations USA, it does not represent, and is not authorized to accept service on behalf of, Nations Investment. *See* Doc. 19-1. The Court will approve this method of service if it "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *Atlantica Holdings, Inc.*, 2014 WL 12778844, at *3.

#### 1. Service through Nations' Counsel is Not Prohibited by International Agreement

"The Hague Service Convention does not prohibit an order pursuant to Rule 4(f)(3) permitting service [on a foreign defendant] through American counsel." *Rana v. Islam*, 305 F.R.D. 53, 65 (S.D.N.Y. 2015); *accord Equipav S.A. Pavimentacao, Engenharia e Comercia Ltda. v. Bertin*, 2022 WL 2758417, at *3 (S.D.N.Y. July 14, 2022); *see also RSM Prod. Corp. v. Fridman*, 2007 WL 1515068, at *2 (S.D.N.Y. May

10

24, 2007) (finding that the Hague Convention does not "prohibit[] service on a defendant residing in the Russian Federation through service on his counsel in the United States" and ordering that the defendant be served at the New York offices of its U.S.-based counsel.).[6]  Thus, alternative service through U.S. counsel is not prohibited by international agreement.

Norton Rose has also represented to this Court that Nations Investment has not authorized them to accept service.  *See* Doc. 19-1.  However, counsel's representation that they are not authorized to accept service on Defendant's behalf "is not determinative as to whether the Court may permit alternate service on that counsel through Rule 4(f)(3)."  *United States v. Mrvic*, 652 F. Supp. 3d 409, 414 (S.D.N.Y. 2023) (collecting cases).  "[T]he law is clear that '[c]ourt-ordered service on counsel made under Rule 4(f)(3) serves as effective authorization … for counsel to receive service.'"  *Goldfarb v. Channel One Russia*, 2018 WL 11225240, at *2 (S.D.N.Y. Oct. 19, 2018).  As one court in this District explained, "[t]he Court's order to serve these attorneys is not to suggest that the lawyers must accept service on [the defendant's] behalf," but rather "sending the service papers to these attorneys is simply a method of notice that is likely to inform [the defendant] of this lawsuit, as the Court assumes that most reasonable lawyers will inform their clients about the pendency of a lawsuit when notified in this manner."  *Platina Bulk Carriers Pte Ltd. v. Praxis Energy Agents DMCC*, No. 20-cv-4892 (NRB), 2020 WL 6083275, at *4 n.4 (S.D.N.Y. Oct. 15, 2020).

---

[6] Rule 4(f)(3) sets forth the methods in which an individual "may be served at a place not within any judicial district of the United States."  Fed. R. Civ. P (4)(f)(3).  Courts are split on whether domestic service on a foreign defendant's United States counsel can constitute "service at a place not within" the United States.  *See, e.g.*, *Zanghi v. Ritella*, 19-cv-5830 (NRB), 2020 WL 589409, at *7 (S.D.N.Y. Feb. 5, 2020) (finding service on domestic counsel is permissible pursuant to Rule 4(f); *Washington State Inv. Bd. v. Odebrecht S.A.*, No. 17-cv-8118 (PGG), 2018 WL 6253877, at *4 (S.D.N.Y. Sept. 21, 2018) (same); *but see Convergen Energy LLC v. Brooks*, 20-cv-3746 (LJL), 2020 WL 4038353, at *7 (S.D.N.Y. July 17, 2020) (service on domestic counsel is not permissible under Rule 4(f) because the "place" of service is within the U.S.).  However, "the majority view" in this District is that service on U.S.-based counsel is permissible pursuant to the Rule.  *In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *12 (Bankr. S.D.N.Y. Dec. 14, 2020) (citing cases).  The Court agrees with the majority view ruling that service to a foreign defendant via domestic counsel is permissible pursuant to Rule 4(f)(3).

*2. Due Process is Satisfied*

The remaining inquiry is whether the proposed method of service comports with due process. Satisfying due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Luessenhop v. Clinton County*, 466 F.3d 259, 269 (2d Cir. 2006). "'[S]ervice on a foreign defendant through his American lawyer' satisfies due process where there has been 'adequate communication between the foreign defendant and counsel.'" *W.J. Deutsch & Sons Ltd. v. Zamora*, 2023 WL 5609205, at *8 (S.D.N.Y. Aug. 30, 2023). The "primary consideration is whether service on counsel is reasonably likely to apprise defendants of the action." *Id.* (internal citations and quotations omitted).

Nations Investment has not been served and is unrepresented by counsel in this action. The Court finds *Stream SICAV v. Wang* instructive on the issue. 989 F. Supp. 2d 264, 279–80 (S.D.N.Y. 2013). In *Wang*, plaintiffs sought alternative service on a parent company's U.S.-based counsel in order to effectuate service on the chief operating officer of its subsidiary company. *Id.* at 278–79. Given the close relationship between the subsidiary and parent corporation,[7] the Court held it was "all but inconceivable" that the parent company's counsel "would be unable to inform [a subsidiary defendant] of this lawsuit," and that therefore, serving such counsel was "reasonably calculated to apprise [the subsidiary defendant] of the pendency of this action" and comported with due process. *Id.* at 279–80.

Here, Norton Rose has held itself out as representing Nations, Nations Investment's parent company, in multiple court filings. *See, e.g.*, Doc. 46 (Nation Defendants' motion to dismiss filed by Norton Rose); Doc. 102 (letter to the Court filed

---

[7] Specifically, the court distinguished cases where "high employees of subsidiaries [are] far enough removed from their corporate parents," by noting the chief executive officer in question was the "general manager of all the . . . subsidiaries" and that he was "the key to success" of the parent company. *Wang*, 989 F. Supp. 2d at 279.

12

by Norton Rose on behalf of the Nations Defendants). The allegations in this case show a close connection between Nations and Nations Investment. For example, the Amended Complaint alleges Nations and Nations Investment helped managed the criminal Enterprise. Doc. 35 ¶ 121. It further alleges that Nations invested $43 million into the Partnership between Nations Investment and Khan Funds, and then details how both Nations and Nations Investment engaged in criminal misconduct to attempt to force Plaintiffs to acquire semiconductor technologies. *Id.* ¶¶ 3, 63, 68, 72, 75. 76 78–83. Furthermore, Norton Rose has communicated on behalf of Nations during this action, demonstrating that the firm maintains "adequate communications" with the parent company. *W.J. Deutsch & Sons Ltd. v. Zamora,* No. 21-cv-11003 (LTS), 2023 WL 5609205, at *8 (S.D.N.Y. Aug. 30, 2023). Norton Rose has filed motion to dismiss papers on behalf of Nations, *see* Docs. 46 and 50, and appeared at the November 3 2023 status conference regarding the briefing schedule for the instant motion. Nov. 3, 2023, Minute Entry.

Accordingly, while Nations Investment is not represented by counsel in this action, the Court finds that service on U.S.-based counsel for Nations will be reasonably calculated to appraise Nations Investment about the litigation. *See Wang*, 989 F. Supp. 2d at 279–80; *cf. Wash. State Inv. Bd.*, 2018 WL 6253877, at *9 (granting request to serve U.S.-based counsel where that counsel "has already appeared in this action as counsel for [Brazilian defendant corporation's] subsidiaries"). In sum, the Court finds that the due process requirement is satisfied.

IV.   **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for alternative service on Nations Investment through service upon Norton Rose is GRANTED. Plaintiffs are directed to serve Norton Rose by personal service at counsel's offices and to file proof of service by July 5, 2024.

Plaintiffs' motion for alternative service on the Nations Defendants, Luo, Sun, Yu, and Huang, is DENIED as moot in light of these parties' waivers of service. *See* Docs. 90, 95, 98.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 87 and 97.

It is SO ORDERED.

Dated:　June 13, 2024
　　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　EDGARDO RAMOS, U.S.D.J.