UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KHAN FUNDS MANAGEMENT AMERICA, INC. *and* XUEFENG DAI,

Plaintiffs,

*– against –*

NATIONS TECHNOLOGIES, INC., NATIONS TECHNOLOGIES (USA) INC., SHENZHEN QIANHAI NATIONS INVESTMENT MANAGEMENT CO. LTD., ZHAOXUE LUO, YINGTONG SUN, BAOXIN HUANG, JUNEE YU, YAPING CHEN, HUAXIA GENERAL PROCESSOR TECHNOLOGIES INC., OPTIMUM SEMICONDUCTOR TECHNOLOGIES INC. D/B/A GENERAL PROCESSOR TECHNOLOGIES, KEYI LI, *and* DOES 1-20,

Defendants.

NATIONS TECHNOLOGIES INC., SHENZHEN QIANHAI NATIONS INVESTMENT MANAGEMENT CO. LTD., *and* SHENZHEN GUOTAIQIXING INDUSTRY INVESTMENT FUND CENTRE (LIMITED PARTNERSHIP),

Counterclaim-Plaintiffs,

*– against –*

KHAN FUNDS MANAGEMENT AMERICA, INC., XUEFENG DAI, BEIJING KHAN PHARMACEUTICAL HOLDINGS CO., LTD., *and* SHENZHEN QIANHAI GENGHIS KHAN FUND MANAGEMENT CO., LTD.,

Counterclaim-Defendants.

**OPINION & ORDER**

22-cv-05055 (ER)

ZHAOXUE LUO,

Counterclaim-Plaintiff,

– *against* –

XUEFENG DAI,

Counterclaim-Defendant.

RAMOS, D.J.:

In this action, Nations Technologies Inc. ("Nations"), Shenzhen Qianhai Nations Investment Management Co. Ltd. ("Nations Investment"), and Shenzhen Guotaiqixing Industry Investment Fund Centre (the "Partnership") (collectively, the "Counterclaim Plaintiffs") asserted seven counterclaims against Xuefeng Dai, Khan Funds Management America, Inc. ("Khan Funds"), Beijing Khan Pharmaceutical Holdings Co., Ltd. ("Beijing Khan"), and Shenzhen Qianhai Genghis Khan Fund Management Co., Ltd. ("China Khan") (collectively, the "Counterclaim Defendants").[1] The Court dismissed six of those counterclaims as untimely in an opinion and order issued March 24, 2026. Doc. 273.

Before the Court is the Counterclaim Plaintiffs': (1) motion for reconsideration of the Court's March 24, 2026, order, Doc. 274; and (2) motion for the issuance of letters of request for judicial assistance in obtaining discovery from three banks in China, Doc. 212. For the reasons set forth below, the motions are DENIED.

## I. MOTION FOR RECONSIDERATION

### A. Background

The Court assumes familiarity with the relevant facts, which are set forth in the Court's previous opinions. *See Khan Funds Management America, Inc. v. Nations*

[1] Because the Counterclaim Plaintiffs and Counterclaim Defendants differ from the plaintiffs and defendants in the original action, to avoid any confusion, the Court uses "Plaintiffs" and "Defendants" to refer solely to the parties in the operative complaint. *See* Doc. 35.

*Technologies Inc.*, No. 22-CV-05055 (ER), 2025 WL 1003964, at *1–8 (S.D.N.Y. Mar. 31, 2025) (summarizing the allegations in the amended complaint); *Khan Funds Management America, Inc. v. Nations Technologies, Inc.*, No. 22-CV-05055 (ER), 2026 WL 809748, at *1–7 (S.D.N.Y. Mar. 24, 2026) (summarizing the allegations in the countercomplaints). In addition, the Court will not repeat the extensive procedural history, which is detailed in Court's March 24, 2026, opinion. *Khan Funds Management America, Inc.*, 2026 WL 809748, at *7–8.

The instant motion seeks reconsideration of the Court's order partially dismissing the Counterclaim Plaintiffs' counterclaims. In that order, which the Court issued on March 24, 2026, the Court dismissed the Counterclaim Plaintiffs' claims for breach of contract, fraud, breach of fiduciary duty, conversion, and unjust enrichment as time-barred. Doc. 273 at 10–17. The Counterclaim Plaintiffs then filed a motion for reconsideration on April 7, 2026. Doc. 274.

**B. Legal Standard**

Local Rule 6.3 allows parties to file motions for reconsideration. Loc. Civ. R. 6.3. However, the standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). Thus, "[a] motion for reconsideration should be granted only when the [movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atlantic Airways, Ltd. v. National Mediation Board*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

A motion for reconsideration "is not an opportunity to present 'new facts, issues[,] or arguments not previously presented to the court.'" *SimplexGrinnell LP v. Integrated*

*Systems & Power, Inc.*, 642 F. Supp. 2d 206, 210 (S.D.N.Y. 2009) (quoting *Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4770, 2004 WL 2782876, at *1 (S.D.N.Y. Dec. 3, 2004)). Nor is it a vehicle to strengthen arguments made in a party's original briefing or "offer additional support for an argument rejected previously by the Court." *Drapkin v. Mafco Consolidated Group, Inc.*, 818 F. Supp. 2d 678, 696 (S.D.N.Y. 2011). Indeed, "[t]he reason for the rule confining reconsideration to matters that were 'overlooked' is to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" *Schoolcraft v. City of New York*, 298 F.R.D. 134, 136 (S.D.N.Y. 2014) (quoting *Polsby v. St. Martin's Press*, Inc., No. 97–690 (MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)). The moving party ultimately bears the burden of "demonstrat[ing] that the Court overlooked controlling decisions or material facts that were before it on the original motion, and that might 'materially have influenced its earlier decision.'" *Id.* (quoting *Anglo American Insurance Group v. CalFed, Inc.,* 940 F. Supp. 554, 557 (S.D.N.Y. 1996)).

**C. Discussion**

The Counterclaim Plaintiffs contend that reconsideration is appropriate because the Court "overlooked" three matters: (1) facts regarding when the counterclaims accrued, (2) events that allegedly interrupted the statute of limitations, and (3) certain allegations and prior rulings that are relevant to the revival of the statute of limitations pursuant to N.Y. C.P.L.R. § 203(d). Doc. 274 at 8. For the reasons explained below, the Court finds that none of these contentions has merit.

*1. Accrual of the Counterclaims*

The Court previously held that the counterclaims for breach of contract, fraud, breach of fiduciary, conversion, and unjust enrichment accrued in early 2017, because the Counterclaim Plaintiffs either knew or should have known that their "civil law rights ha[d] been infringed" at that point, which thus triggered the Chinese statute of

limitations. Doc. 273 at 24–28. The Counterclaim Plaintiffs seek reconsideration of that conclusion on three grounds. Doc. 274 at 12.

*First*, the Counterclaim Plaintiffs argue that the Court overlooked factual allegations that, in its view, "make clear [that] the Counterclaim-Plaintiffs *did not know* in early 2017 when the audit results came back that Dai had stolen millions of dollars from NTI, Nations Investment and the Partnership." *Id.* at 13 (emphasis added). In support of this contention, they highlight their allegations that Dai was afforded substantial autonomy to manage the Partnership's day-to-day affairs, and that, after the audit results came back, Dai pretended to agree to a proposal to change the structure of the Partnership to ensure better governance of its investment and claimed that he was calculating the payment of a forthcoming dividend. *Id.* at 12–13 (citing Doc. 167 ¶¶ 62, 80–82). The Counterclaim Plaintiffs also note that, after they received the audit results, Dai's associate allegedly proposed a call to discuss a forthcoming audit, and that, after Nations Investment discovered that the Partnership's, Beijing Khan's, and GTQX's offices had been abandoned, it filed a police report, made disclosures to its shareholders, and brought litigation in China to remove Beijing Khan and Dai from the Partnership.[2] *Id.* at 13 (citing Doc. 167 ¶¶ 85–86, 90–91, 96, 100).

But, as the Court explained in its prior opinion, "the Chinese statute of limitations begins to run when the plaintiff knew or *should have known* that his rights have been infringed and by whom." Doc. 273 at 25. And, based on the audit results and Dai's

---

[2] The Court notes that the Counterclaim Plaintiffs did not cite to most these allegations in support of their accrual argument in opposition to the motion to dismiss. *Compare* Doc. 206 at 33 (citing Doc. 167 ¶¶ 86, 96–97) *with* Doc. 274 at 12–13 (citing Doc. 167 ¶¶ 62, 80–82, 85–86, 90–91, 96, 100). They instead argued that the counterclaims accrued "on around November 29, 2017 at the earliest, when Nations discovered that Dai and his entities had deserted their PRC offices and reported Dai to the Public Security Bureau." Doc. 206 at 33. However, a "motion for reconsideration is not an opportunity to present 'new facts, issues or arguments not previously presented to the court.'" *SimplexGrinnell LP v. Integrated Systems & Power, Inc.*, 642 F. Supp. 2d 206, 210 (S.D.N.Y. 2009) (quoting *Maalouf v. Salomon Smith Barney, Inc.,* No. 02 Civ. 4770, 2004 WL 2782876, at *1 (S.D.N.Y. Dec. 3, 2004)). Thus, insofar as the Counterclaim Plaintiffs failed to present these allegations in support of their initial accrual argument, they cannot do so for the first time on reconsideration.

alleged inability to account for its "shocking[]" "revelations"—despite the Counterclaim Plaintiffs' repeated requests for explanation—the Counterclaim Plaintiffs should have known that their rights had been infringed in early 2017. Doc. 167 ¶¶ 7, 76, 78. To be sure, the Court also noted that these same allegations also suggest that the Counterclaim Plaintiffs did, in fact, know about Dai's alleged misdeeds—especially when considered alongside their allegations that they were "unaware of the *scope*" of Dai's alleged "theft" and "diversions" in early 2017. *Id.* But those observations did not alter the ultimate basis for the Court's statute of limitations ruling: namely, that the Counterclaim Plaintiffs should have known that their rights were infringed in early 2017, and that any contrary contention was not plausible. Thus, the Counterclaim Plaintiffs' contention that they did not, in fact, know about Dai's alleged misdeeds misunderstands the Court's ruling.[3]

In resisting this conclusion, the Counterclaim Plaintiffs argue that their efforts to seek answers from Dai "can equally be interpreted as an investigation of whether a breach had in fact occurred," especially given Dai's "wide latitude" under the Partnership Agreement. Doc. 274 at 12. From this, they contend that they plausibly "had no reason to believe that discrepancies in the audit resulted from a breach of contract (or any tortious act) as opposed to a mere misunderstanding arising from their lesser knowledge," and thus that the Court impermissibly chose between competing plausible inferences. *Id.*

[3] In their reply, the Counterclaim Plaintiffs relatedly assert that the Court improperly dismissed the claims on timeliness grounds because, in its view, "timeliness is a highly-fact dependent affirmative defense, and courts should decline to dismiss where there is even 'some doubt.'" Doc. 281 at 7. Of course, insofar as the Counterclaim Plaintiffs failed to raise this argument in their opening brief, they cannot raise this issue for the first time in their reply. *See Anghel v. Sebelius*, 912 F. Supp. 2d 4, 14 (E.D.N.Y. 2012) ("It is well settled in the Second Circuit that a party may not raise an argument for the first time in his reply brief."). And even if the Court considered this argument, it would not change the outcome because the Court already rejected it in its previous opinion. *See* Doc. 273 at 19 n.10. As the Court noted there, in raising this argument, the Counterclaim Plaintiffs merely asserted, in a conclusory manner, that "there are factual determinations intertwined with assessing the statute of limitations defense for each and every claim," without explaining what those determinations might be or why there was any doubt as to their resolution. *Id.* Having failed to develop this argument the first time around, they cannot do so on reconsideration. *Gorss Motels Inc. v. Sprint Communications Co., L.P.*, No. 3:17-CV-546 (JAM), 2020 WL 1303175, at *1 (D. Conn. Mar. 19, 2020) ("A motion for reconsideration is not an occasion for a losing party . . . to take a 'second bite at the apple' with arguments that it failed to raise or properly develop before." (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012))).

(citing *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020); *Palin v. N.Y. Times*, 940 F.3d 804, 815 (2d Cir. 2019)). But the Court's ruling was not premised on the fact that the Counterclaim Plaintiffs merely sought explanations from Dai—it was instead based on the fact that, despite the audit's "shocking[]" findings, and the Counterclaim Plaintiffs' repeated requests for answers, the Counterclaim Plaintiffs never received an explanation for the audit's "revelations." Doc. 167 ¶¶ 7, 76, 78. Indeed, contrary to the theory they now espouse in their motion, the Counterclaim Plaintiffs did not allege that Dai offered confusing or technical explanations for the audit findings; they instead asserted that, in response to their repeated requests for an explanation "throughout early 2017," "Dai and Beijing Khan were *unable* to explain or account for the issues revealed by the" audit. *Id.* ¶ 78 (emphasis added). Against this backdrop, the Counterclaim Plaintiffs' contention that it would be reasonable to attribute the audit findings to a "mere misunderstanding arising from [the Counterclaim Plaintiffs'] lesser knowledge" is not plausible—regardless of Dai's autonomy to manage the Partnership's day-to-day affairs. Doc. 274 at 12. Indeed, the Counterclaim Plaintiffs did not even adopt that position in their own complaint: they instead alleged that, because of Dai's failure to explain the audit findings, they were "kept in the dark about the *true scope* of Dai's mismanagement and theft." Doc. 167 ¶ 78 (emphasis added). Thus, in ruling that the claims accrued in early 2017, the Court was not choosing between competing plausible inferences—it was simply holding that any contention that the audit did not place the Counterclaim Plaintiffs on inquiry notice was not plausible. *See* Doc. 273 at 25–26 & n.14.

*Second*, the Counterclaim Plaintiffs argue that the Court's accrual decision "contradicts" the testimony of its expert, Professor Jacques DeLisle, that mere "suspicion" from the audit would not trigger accrual under Chinese law "because the audit lacked sufficient detail." Doc. 274 at 13 (quoting Doc. 208 ¶ 33). The Counterclaim Plaintiffs concede, as they must, that the Court is not required to accept their expert's legal conclusion. *Id.*; *see also Jonas v. Estate of Leven*, 116 F. Supp. 3d

314, 330 (S.D.N.Y. 2015) ("The expert testimony should help the court understand the content of the governing law, but courts need not credit the experts' application of law to the facts of the case."). They argue, however, that the Court "was required in some way to determine when, pursuant to [Chinese] law, the . . . Counterclaim Plaintiffs 'should have known' their rights were infringed such that their claims accrued, and should have made such determination for each Counterclaim." Doc. 274 at 13. But the Court's analysis did, in fact, address each of the counterclaims. *See* Doc. 273 at 24–30. Thus, this contention lacks merit.

In addition, and perhaps more importantly, the Counterclaim Plaintiffs failed to raise this aspect of the expert's testimony—or any argument about the contents of the audit, and whether it put them on inquiry notice—in opposition to the motion to dismiss. *See* Doc. 206 at 33. And that was so notwithstanding the fact that the Counterclaim Defendants explicitly premised their accrual argument on the Counterclaim Plaintiffs' receipt of the audit. Thus, they cannot raise this argument for the first time on reconsideration.

*Third*, the Counterclaim Plaintiffs contend that "the Court overlooked that the Partnership itself is a Counterclaim-Plaintiff" in this case, and that "under any law, the claims could not have accrued to the Partnership while Dai continued to operate it and hide his fraudulent acts." Doc. 273 at 14. In support of this contention, they cite to a case that applies the doctrine of adverse domination, which "permits the statute of limitations on a claim to be tolled 'where an action is brought on behalf of an entity which has been defrauded by persons who completely dominated and controlled it.'" *Meridien International Bank Ltd. v. Government of the Republic of Liberia*, 23 F. Supp. 2d 439, 447 (S.D.N.Y. 1998) (quoting *Armstrong v. McAlpin*, 699 F.2d 79, 87 (2d Cir. 1983)). But the Counterclaim Plaintiffs plainly did not present this tolling theory—or any statute of limitations argument specific to the Partnership—in their opposition to the

motion to dismiss. Thus, they cannot raise this theory now. *See Drapkin*, 818 F. Supp. 2d at 696.

2. *Interruption of the Statute of Limitations*

The Counterclaim Plaintiffs also argue that the Court failed to consider whether three events—Nations and Nations Investment's filing of a report with the Shenzen Municipal Public Security Bureau on November 29, 2017, Doc. 167 ¶ 96; Nation Investment's issuance of a notice requesting Beijing Khan's removal from the Partnership in December 2017, *id.* ¶¶ 100–01; and Nation Investment's filing of a civil complaint against Beijing Khan on May 2, 2018, *id.* ¶ 101—"reset" the statute of limitations under Chinese law. Doc. 274 at 14–16. But, as Dai and Khan Funds note, the Counterclaim Plaintiffs failed to raise these events as grounds for resetting the statute of limitations in their opposition to the motion to dismiss. Doc. 279 at 8–9. Instead, the Counterclaim Plaintiffs argued that two different events reset the statute of limitations: the issuance of one demand letter to Dai on November 9, 2020, and another demand letter on October 25, 2023. Doc. 206 at 33.

The Court also notes that the Counterclaim Plaintiffs were aware of the three events that they now raise in their motion for reconsideration when they opposed the motion to dismiss. Indeed, their own expert, DeLisle, opined on whether each of these events—and others—would reset the statute of limitations in his declaration. Yet, the Counterclaim Plaintiffs chose not to advocate for his positions in their brief in opposition to the motion to dismiss. And perhaps for good reason: DeLisle's conclusions with respect to these events were equivocal. *See, e.g.*, Doc. 208 ¶¶ 45, 48, 53 (suggesting that these events "could," "likely would," or "might" reset the statute of limitations for some or all of the Counterclaim Defendants). DeLisle also identified gaps in the record and legal issues that precluded him from opining on the sufficiency of these events. *See*, *e.g.*, *id.* ¶ 46 (noting that the "materials available to [him] d[id] not indicate the means by which" the December 20, 2017, notice "was sent"); *id.* ¶ 48 (suggesting that whether May

2, 2018, litigation interrupted the statute of limitations for Dai, Khan Funds, and China Khan turns on whether they could be held jointly and severally liable for the Chinese equivalent of the claims asserted by the Counterclaim Plaintiffs). Of course, in opposing the motion to dismiss, the Counterclaim Plaintiffs were not required to adopt these positions; in fact, they were entitled to decide which legal arguments to advance and on what grounds. But having chosen to advocate for only some of DeLisle's positions in response to the motion to dismiss, the Counterclaim Plaintiffs cannot now urge reconsideration on grounds that they decided not to pursue.[4]

Put simply, if the Counterclaim Plaintiffs wished to raise these arguments, they were required to assert them in their legal brief—not bury them in their expert's declaration. *See GMAC Mortgage Corp. of PA v. Weisman*, No. 95 Civ. 9869 (JFK), 1997 WL 83416, at *4 (S.D.N.Y. Feb. 27, 1997) (explaining that "[l]egal argument, with citation to appropriate legal authority, must be made in the memorandum of law" and that "a party represented by counsel may not rely solely on blanket assertions in an attorney affidavit . . . , where the memorandum of law neither mentions those assertions nor offers any legal argument in support of them, and expect the [arguments] to be properly considered by the Court"); *Mercer v. Mercer*, No. CV 13-5686 (SJF) (WDW), 2014 WL 3654667, at *5 (E.D.N.Y. May 22, 2014) ("As counsel should know, legal arguments in motions in federal court must be set forth in a memorandum of law, not a declaration or affidavit."); *Hudson v. County of Dutchess*, 51 F. Supp. 3d 357, 378 (S.D.N.Y. 2014)

---

[4] In a footnote in their opposition brief, the Counterclaim Plaintiffs did assert that "the December 20 notice letter could have reset the statute of limitations period under Chinese law" and cited to a paragraph in DeLisle's declaration. Doc. 206 at 33 n.25. But, as Dai and Khan Funds note, the Counterclaim Plaintiffs made no effort to argue that this letter did, in fact, reset the statute of limitations. *See* Doc. 279 at 9 n.2; *United States v. Greenfield*, 831 F.3d 106, 118 n.9 (2d Cir. 2016) (noting that a party waives an argument by advancing it only in a footnote). And even if the Counterclaim Plaintiffs could incorporate DeLisle's arguments via this footnote—which they cannot—they have not explained why this notice would be sufficient to reset the statute of limitations given DeLisle's contention that the means of sending a notice is legally relevant to that question—and his assertion that "materials available to [him] d[id] not indicate the means by which th[at] notice was sent." Doc. 208 ¶¶ 40, 46. Thus, even if the Court considered this argument, the Counterclaim Plaintiffs have not shown that its effect on the statute of limitations is non-speculative.

("[T]he Court ordinarily does not consider arguments that represented parties do not raise in their memoranda.").[5] This requirement ensures notice to the opposing party and promotes fairness in the resolution of the dispute. *See Urban v. Capital Fitness*, No. CV 08-3858 (WDW), 2010 WL 4878987, at *5 (E.D.N.Y. Nov. 23, 2010) (explaining that "[l]egal argument is to be set forth in a Memorandum of Law, [and] not an Affirmation," because "the parties cannot be allowed to exceed page limits by setting forth additional legal argument in an inappropriate forum"). At bottom, "it is not [the Court's] obligation to ferret out a party's arguments" or "unexpressed challenge[s]" that "may have been hidden between the lines of [a party's] brief." *McCarthy v. S.E.C.*, 406 F.3d 179, 186 (2d Cir. 2005). "That, after all, is the purpose of briefing." *Id.*; *see also Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) ("[J]ust as a district court is not required to scour the record looking for factual disputes, it is not required to scour the party's various submissions to piece together appropriate arguments."). Because the Counterclaim Plaintiffs could have raised these arguments in response to the motion to dismiss and offer no explanation for their failure to do so, they are not proper grounds for reconsideration.

*3. Application of N.Y. C.P.L.R. § 203(d)*

The Counterclaim Plaintiffs finally argue that, in applying New York C.P.L.R. § 203(d), the Court "ignored key allegations in the [c]ounterclaims and its own prior conclusions" in this and a related case. Doc. 274 at 16.

As the Court has previously explained, Section 203(d) "allow[s] a defendant to assert an otherwise untimely claim" if the claim "arose out of the same transactions alleged in the complaint." *Carlson v. Zimmerman*, 63 A.D.3d 772, 774 (N.Y. App. Div. 2009) (quoting *DeMille v. DeMille*, 5 A.D.3d 428, 429 (N.Y. App. Div. 2004)). However,

[5] This is especially true here, given that DeLisle does not represent the Counterclaim Plaintiffs—and thus cannot assert arguments on their behalf—and the fact that his conclusions need not be credited by the Court. *See Jonas*, 116 F. Supp. 3d at 330.

a "party wishing to bring a counterclaim within the protection of [Section 203(d)] must show that the counterclaim 'seek[s] *a recovery-back* predicated on some act or fact growing out of the matter constituting the cause or ground of the action brought,'" rather than "a monetary set-off based on separate and distinct claims." *Falk v. FFF Industries, Inc.*, 731 F. Supp. 134, 139 (S.D.N.Y. 1990) (emphasis added) (quoting *SCM Corp. v. Fisher Park Lane Co.*, 358 N.E.2d 1024, 1026 (N.Y. 1976)); *see also Rochester Health Network*, 123 A.D.2d at 510 ("Recoupment does not allow one transaction to be offset against another."). In other words, Section 203(d) permits revival "only as a shield for recoupment purposes." *Carlson*, 63 A.D.3d at 774 (quoting *DeMille*, 5 A.D.3d at 429).

In applying these principles, New York courts have made clear that, for Section 203(d) to revive an untimely counterclaim, it is not enough that a claim and counterclaim are related in a "general sense." *SCM Corp.*, 358 N.E.2d at 1027; *cf. Messinger v. Mount Sinai Medical Center*, 279 A.D.2d 344, 345 (N.Y. App. Div. 2001) ("The two actions are related, but there is no common thread tying the two together to warrant revival of the . . . counterclaim under CPLR 203(d)."). Instead, New York courts "have 'generally required a *tight nexus* between claim and counterclaim before section 203(d) will save a counterclaim from an otherwise-applicable statute of limitations.'" *Estate of Mantle v. Rothgeb*, 537 F. Supp. 2d 533, 544 (S.D.N.Y. 2008) (emphasis added) (quoting *Macaluso v. U.S. Life Insurance Co.,* No. 03-cv-2337, 2004 WL 1497606, at *7 (S.D.N.Y. July 2, 2004)). And, importantly, "[i]t is incumbent upon a party seeking to have claims exempted from the statute of limitations under [Section 203(d)] to demonstrate that the counterclaims fall within the purview of the rule." *Falk*, 731 F. Supp. at 139. This is consistent with the general principle that "the plaintiff bears the burden of proving that a particular statute of limitation has been tolled." *Soward v. Deutsche Bank AG*, 814 F. Supp. 2d 272, 278 (S.D.N.Y. 2011).

As the Court noted in its March 2026 opinion, in asserting that they were entitled to Section 203(d) revival, the Counterclaim Plaintiffs made no effort to show that there

was a "tight nexus" between the claims and counterclaims, *Rothgeb*, 537 F. Supp. 2d at 544, such that any of the counterclaims constituted "a shield for recoupment purposes" rather than distinct claims seeking "affirmative relief," *Goldberg Cohen, LLP v. Luv N' Care, Ltd.*, No. 16 Civ. 6576 (NRB), 2018 WL 4538927, at *7 (S.D.N.Y. Sept. 20, 2018). Instead, they argued, in a conclusory manner, that Section 203(d) revived "all of the [c]ounterclaims" because they "arose from the same investment relationship with Dai, which gives rise to [the] Plaintiffs' claims." Doc. 206 at 32. They then cited to a single case for the proposition that Section 203(d) applies to "claims and defenses that arise out of the same transaction as a claim asserted in the complaint." *Id.* In other words, the Counterclaim Plaintiffs did not develop any argument as to why any of their claims were "interposed as an effort at recoupment," even though New York courts have plainly interpreted Section 203(d) to impose that requirement. *Falk*, 731 F. Supp. at 139. They instead asserted—without distinguishing between the counterclaims or discussing any relevant or analogous legal authorities[6]—that they were entitled to Section 203(d) revival because the counterclaims and Plaintiffs' claims "arose from the same investment relationship." Doc. 206 at 32. But, as the Court explained, the caselaw is clear that the mere fact that claims arose from the same business or contractual relationship is not sufficient to establish that Section 203(d) applies. *See First Fiduciary Bank N.A. New Jersey v. Companhia de Navegacao Maritima Netumar*, 637 F. Supp. 1182, 1185 (S.D.N.Y. 1986); *Luv N' Care, Ltd.*, 2018 WL 4538927, at *7; *SCM Corp.*, 358 N.E.2d at 1027. Because the Counterclaim Plaintiffs had not argued that the counterclaims and claims were related in anything more than this "most general sense," the Court concluded

[6] The Court notes in this regard that, in contrast to the broad-brush fashion in which the Counterclaim Plaintiffs sought revival of all of their counterclaims, courts routinely distinguish between different counterclaims—and the specific theories underlying them—in determining whether Section 203(d) applies. *See, e.g.*, *Rothgeb*, 537 F. Supp. 2d at 544–45; *Falk*, 731 F. Supp. at 139–40. Indeed, this level of specificity is often required to ascertain whether adjudicating a counterclaim and any of the plaintiff's claims "will involve [the] development of different facts" or "relate to different time periods and different actions by the parties." *Distribuidora De Discos Karen C. Por A. v. Universal Music Group, Inc.*, No. 13-CV-7706 (JPO), 2017 WL 1019697, at *6 (S.D.N.Y. Mar. 15, 2017).

that Section 203(d) did not apply. Doc. 273 at 23 (quoting *SCM Corp*., 358 N.E.2d at 1027); *see Krause v. Kelahan*, 161 F.4th 66, 87 n.17 (2d Cir. 2025) ("Courts are not obligated to invent arguments that parties do not make or to scour the record for support for the parties' claims."); *Abdou v. Walker*, No. 19 Civ. 1824 (PAE), 2022 WL 3334700, at *3 (S.D.N.Y. Aug. 12, 2022) ("[I]t is not the obligation of this court to research and construct legal arguments open to parties . . . ." (internal quotations omitted)).

In seeking reconsideration, the Counterclaim Plaintiffs acknowledge—for the first time—that Section 203(d) requires them to demonstrate a tight nexus between the counterclaims and claims and thus that the counterclaims seek recoupment based on the underlying claims. Doc. 274 at 17–18. They also highlight numerous specific allegations that, in their view, show that the "the parties' commercial relationship form[s] the core of both Dai's affirmative claims and the [c]ounterclaims." *Id.* at 16. But insofar as the Counterclaim Plaintiffs highlight these allegations to support their previous argument that Section 203(d) revival applies because counterclaims and claims arise from the same business relationship, the Court has already rejected that argument as contrary to New York state law for the reasons already explained. *See Drapkin*, 818 F. Supp. 2d at 696 ("A motion for reconsideration 'is not a vehicle to offer additional support for an argument rejected previously by the Court.'"). Nor do the Counterclaim Plaintiffs identify any conflicting authority that the Court overlooked in its decision on the original motion.[7]

[7] In their motion for reconsideration, the Counterclaim Plaintiffs do cite to some authority that they presented in their initial motion in support of their argument that the fact "Plaintiffs' legal theories are distinct from the legal theories supporting the Counterclaims is irrelevant," because "[b]y the terms of the statute, CPLR 203(d) is governed by factual allegations, not legal theories." Doc. 274 at 17. But this authority does not warrant reconsideration because, at bottom, the Court never suggested that Section 203(d) required identity of legal theories. Instead, the Court merely noted that, to the extent that the Counterclaim Plaintiffs sought to analogize their circumstances to the facts warranting revival in *Bloomfield v. Bloomfield*, 764 N.E.2d 950 (N.Y. 2001), the Court could not see how the analogy was appropriate given that the relationship between the claim and time-barred defense in *Bloomfield* was "direct[]" and in the nature of recoupment in the sense that the defendant challenged the validity of an agreement that the plaintiff sought to enforce. Doc. 273 at 22. The Court then noted that, by contrast, the Counterclaim

To the extent that the Counterclaim Plaintiffs offer these factual allegations in support of a different argument—namely, that the counterclaims are "interposed as an effort at recoupment"—the argument does not warrant reconsideration because the Counterclaim Plaintiffs failed to raise it in response to the underlying motion. *See Falk*, 731 F. Supp. at 139. Indeed, in their opposition to the motion to dismiss, the Counterclaim Plaintiffs argued, incorrectly, that Section 203(d) revived counterclaims regardless of whether they sought recoupment or affirmative relief. Doc. 273 at 21; Doc. 32 at 31–32. And, in line with this view, they failed to develop any argument that the counterclaims and claims in this case shared the requisite nexus under Section 203(d), and instead asserted, in a conclusory manner, that their counterclaims should be revived because they arose from the same business relationship as the Plaintiffs' claims. *See* Doc. 273 at 21. Having lost that battle, the Counterclaim Plaintiffs cannot now relitigate this issue based on arguments and factual allegations they failed to surface in the first instance.[8] *See Drapkin*, 818 F. Supp. 2d at 696; *Gorss Motels Inc.*, 2020 WL 1303175, at *1 ("A motion for reconsideration is not an occasion for a losing party . . . to take a 'second bite at the apple' with arguments that it failed to raise or properly develop before.").

In a final bid to revive their counterclaims, the Counterclaim Plaintiffs argue that the Court's Section 203(d) ruling conflicts with its prior determinations in a consolidated

---

Plaintiffs' theory of revival was far more attenuated, insofar as it was premised on the parties' business relationship. Thus, contrary to the Counterclaim Plaintiffs' apparent contention, the Court did not suggest that Section 203(d) required identity of legal theories.

[8] In their reply brief, the Counterclaim Plaintiffs appear to argue that, even if they failed to properly raise this argument in opposition to the motion to dismiss, reconsideration is necessary to prevent "manifest injustice." Doc. 281 at 8. Of course, insofar as the Counterclaim Plaintiffs failed to raise this argument in their initial motion for reconsideration, they cannot do so for the first time in their reply. In any event, the caselaw is clear that a party who inexplicably fails to raise an argument does not face "manifest injustice" from the judgment that results from that failure. *See Corsair Special Situations Fund, L.P. v. National Resources*, 595 F. App'x 40, 44 (2d Cir. 2014) (explaining that "a judgment in a civil case does not constitute 'manifest injustice' where the movant's arguments for relief 'were available to the [party] below and [the party] proffer[s] no reason for [its] failure to raise the arguments.'" (quoting *In re Johns–Manville Corp.*, 759 F.3d 206, 219 (2d Cir. 2014))).

case, *Guotaiqixing Biomedical International (S) Pte. Ltd. v. Dai*, No. 24-CV-03142 (ER), 2024 WL 4815982 (S.D.N.Y. Nov. 18, 2024). In that case, Guotaiqixing Biomedical International (S) Pte. Ltd. ("GTQX") seeks the recognition of a Singapore judgment against Dai pursuant to New York's Foreign Country Money Judgment Act (the "MJA Action"). The Counterclaim Plaintiffs highlight that, in denying GTQX's motion to remand the MJA Action to state court, the Court held that Dai's claims in this case and GTQX's claims in MJA Action were mirror images of one another, and thus that the Court had federal question jurisdiction over the MJA Action. *Id.* at *2. The Counterclaim Plaintiffs also note that, in the same opinion, the Court consolidated the cases because it concluded that they "involve common issues of law and fact and many of the same parties." *Id.* at *6.

The Counterclaim Plaintiffs argue that these rulings warrant reconsideration because the "only difference" between their counterclaims and the claims that resulted in the Singapore judgment is that the counterclaims "concern thefts that took place from entities located outside of Singapore." Doc. 274 at 18. They go on to contend that, because the Court has "already held that the judgment enforcement action premised on the Singapore judgment was both the 'mirror image' of Dai's claims and they sufficiently overlapped to warrant consolidation," "it makes no sense to find that the [c]ounterclaims themselves are distinct under CPLR 203(d)." *Id.* at 18–19.

Of course, insofar as the Counterclaim Plaintiffs failed to raise this argument in opposition to the motion to dismiss, they cannot raise this argument for the first time on reconsideration. *See Drapkin*, 818 F. Supp. 2d at 696. In any event, this contention lacks merit insofar as it conflates discrete legal inquiries.

As an initial matter, the questions of whether two actions are mirror images of one another for the purposes of federal question jurisdiction and whether counterclaims should be revived pursuant to Section 203(d) are analytically distinct. By way of background, the mirror image rule allows federal courts to exercise jurisdiction over

certain actions for declaratory relief that do not facially implicate a federal question: it provides that, if the threatened action—by the defendant in the declaratory action—presents a federal question, then a complaint seeking declaratory relief need not state a federal cause of action. *Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 27–28 (1983). To evaluate this question, courts rearrange the parties into "the hypothetical 'mirror image' coercive suit," and then evaluate whether such a suit invokes federal law. *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 69–71 (2d Cir. 2012). Based on this inquiry, the Court held that the mirror image of the MJA Action was an injunction against the future recognition of the Singapore judgment. *Guotaiqixing Biomedical*, 2024 WL 4815982, at *5. Because Dai was seeking precisely that remedy through his RICO claims in the instant case, the Court found that, under the "unique circumstances" present in that case, the MJA Action was a mirror image of Dai's request for injunctive relief.[9] *Id.* But that ruling—which turned on GTQX's and Dai's competing requests for relief—says nothing about the factual nexus between any or all of those claims or whether the claims are sufficiently linked to permit recoupment pursuant to Section 203(d). Nor could it bear on the entirely separate question of whether the claims and counterclaims alleged *in this action* share the requisite nexus pursuant to Section 203(d). Put simply, the Court's mirror image ruling answered a different question than the one posed by the Counterclaim Plaintiffs' invocation of Section 203(d).

Nor does the Court see how its consolidation ruling could play the dispositive role in the Section 203(d) inquiry that the Counterclaim Plaintiffs argue that it must. For one, the Court's observation that the cases "involve common issues of law and fact and many of the same parties" was directed toward the MJA Action and the instant case—not the

[9] Those circumstances included the fact that Dai had filed the RICO Action more than a year before the Singapore judgment was entered—which thus suggested that he did not file the RICO Action to create federal jurisdiction for a future enforcement action that may come to pass. *Guotaiqixing Biomedical*, 2024 WL 4815982, at *5.

claims and counterclaims in this action. *Guotaiqixing Biomedical*, 2024 WL 4815982, at *6. Furthermore, the question of whether to consolidate cases pursuant to Rule 42 differs substantively from the Section 203(d) revival inquiry. Indeed, Rule 42 permits consolidation where two "*actions* . . . involve a common question of law or fact." Fed. R. Civ. P. 42(a)(2) (emphasis added). Section 203(d), by contrast, requires a very specific relationship between the *claims* in an action: it requires that a counterclaim plaintiff show that there is a tight nexus between a time-barred counterclaim and a claim alleged in the plaintiff's complaint, such that the counterclaim constitutes an effort at recoupment. *See Rothgeb*, 537 F. Supp. 2d at 544. Thus, Section 203(d) revival does not necessarily follow from the Court's consolidation ruling.

In sum, the Counterclaim Plaintiffs have not shown any grounds for reconsidering the Court's order partially dismissing their counterclaims. Their motion for reconsideration is accordingly denied.

## II. MOTION FOR ISSUANCE OF LETTERS OF REQUEST

The Counterclaim Plaintiffs also move for the issuance of letters of request pursuant to the Hague Convention. Doc. 214.

### A. Background

The Counterclaim Plaintiffs' motion is premised on twelve alleged transfers from the Partnership's bank account to three entities: Beijing Khan, China Khan, and a third entity—Shenzhen Weiyunnan Trading Co.—which the Counterclaim Plaintiffs allege is controlled by Dai.[10] According to the Counterclaim Plaintiffs, the Partnership's bank statements—which Nations Investment gained access to in August 2019—reveal that Dai made these transfers between December 2015 and November 2017. Doc. 167 ¶¶ 146–48. These include a:

- December 29, 2015, transfer of RMB 6 million to Beijing Khan;

[10] The Counterclaim Plaintiffs' allegation that Shenzhen Weiyunnan Trading Co. is controlled by Dai is made on information and belief. Doc. 167 ¶ 154.

- June 3, 2016, transfer of RMB 6.5 million to China Khan;
- June 20, 2016, transfer of RMB 4 million to China Khan;
- July 5, 2016, transfer of RMB 60 million to China Khan;
- July 8, 2016, transfer of RMB 30 million to China Khan;
- September 14, 2016, transfer of RMB 45 million to China Khan;
- November 1, 2016, transfer of RMB 50.85 million to China Khan;
- December 2, 2016, transfer of RMB 30 million to China Khan;
- September 13, 2017, transfer of RMB 100 million to China Khan;
- September 14, 2017, transfer of RMB 31.5 million to Shenzhen Weiyunnan Trading Co.;[11]
- September 14, 2017, transfer of RMB 5.6 million to China Khan; and
- November 8, 2017, transfer of RMB 780,000 and RMB 980,000 to China Khan.

*Id.* ¶¶ 149, 154. The Counterclaim Plaintiffs contend that each of these transfers represents an unauthorized diversion of Partnership funds to Dai. *Id.* ¶¶ 151–54.

Using Chinese public records, the Counterclaim Plaintiffs have identified the banks and account numbers to which these transfers were made. Doc. 214 at 11. The letters of request are therefore directed at these banks. *Id.* The first letter of request seeks: (1) "[a]ll statements from November 1, 2015 through August 30, 2018, for all accounts in the name of, or for the benefit of, Beijing Khan, including but not limited to" the specific account number to which the transfers were made; (2) "[a]ll account opening and closing documents for the accounts identified in [the previous request] from November 1, 2015 through August 30, 2018"; and (3) "[d]ocuments identifying all persons or entities with authority to withdraw money from the accounts identified in [the two previous requests] from November 1, 2015 through August 30, 2018" from Ping An Bank. Doc. 213-1 at 14. The remaining two letters seek identical discovery from China Construction Bank and Agricultural Bank of China, but for accounts in the name or

---

[11] The Counterclaim Plaintiffs do not allege when or how they discovered this specific transfer. Doc. 167 ¶ 154.

benefit of China Khan and Shenzen Weiyunnan Trading Co., respectively. Doc. 213-2 at 14; Doc. 213-3 at 14. All three letters also request that an authorized representative from each bank execute a business records certification. Doc. 213-1 at 14; Doc. 213-2 at 14; Doc. 213-3 at 14.

**B. Legal Standard**

Pursuant to the Hague Convention and federal law, United States courts may "request the competent authority of another Contracting State, by means of a [l]etter of [r]equest, to obtain evidence, or to perform some other judicial act." Hague Convention ch. I, art. 1, opened for signature Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444, (entered into force with respect to the United States of America Oct. 7, 1972), *reprinted in* 28 U.S.C § 1781(b)(2); Fed. R. Civ. P. 28(b) (permitting federal courts to issue letters of request to foreign countries).[12] A letter of request is "[a] document issued by one court to a foreign court, requesting that the foreign court (1) take evidence from a specific person within the foreign jurisdiction or serve process on an individual or corporation within the foreign jurisdiction and (2) return the testimony or proof of service for use in a pending case." *Letter of Request*, Black Law's Dictionary (12th ed. 2024).[13]

The decision to issue letters of request is an exercise of the Court's discretion. *Blagman v. Apple, Inc.*, No. 12 Civ. 5453 (JCF), 2014 WL 1285496, *4 (Mar. 31, 2014) (collecting cases). In determining whether to issue a letter of request, "courts apply the discovery principles contained in Federal Rule of Civil Procedure 26." *Joseph v. Gnutti Carlo S.p.A.*, No. 15 Civ. 8910 (AJN), 2016 WL 4083433, at *1 (S.D.N.Y. July 25, 2016). Such principles typically include consideration of whether evidence sought by the movant is material or may lead to the discovery of material evidence, the breadth of

---

[12] China is a contracting party to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (i.e., the Hague Evidence Convention). *See* Hague Conference on Private International Law, China Member Page, https://perma.cc/23FZ-8T4M; *see also Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 152–56 (S.D.N.Y. 2011).

[13] "The term 'letters rogatory' is synonymous with the term 'letter[s] of request.'" *Lantheus Medical Imaging, Inc. v. Zurich American Insurance Co.*, 841 F. Supp. 2d 769, 775 n.5 (S.D.N.Y. 2012).

evidence sought, and the availability of such evidence from alternative sources. *See, e.g.*, *Lantheus Medical Imaging, Inc. v. Zurich American Insurance Co.*, 841 F. Supp. 2d 769, 776–77 (S.D.N.Y. 2012). Moreover, and as shown by the language in Rule 26,[14] "[w]hile not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Gnutti Carlo S.p.A.*, 2016 WL 4083433, at *1 (internal quotation marks omitted); *see also* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). It "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Given the broad nature of relevant material, the party seeking application of Hague Convention procedures bears the burden of persuasion, *see Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 435 (E.D.N.Y. 2008), but that burden is not heavy. At the same time, "courts should be mindful of the possible burden placed on foreign judiciary by the issuance of letters [of request] under the Hague Convention." *Pearlstein v. BlackBerry Ltd.*, 332 F.R.D. 117, 120 (S.D.N.Y. 2019), *reconsidered on other grounds*, No. 13-CV-07060 (CM) (KHP), 2019 WL 5287931 (S.D.N.Y. Sept. 20, 2019). Thus, courts have a "duty . . . to carefully scrutinize applications of this type to attempt to minimize the burden placed on the foreign judiciary by virtue of such an application." *Belparts Group, N.V. v. Belimo Automation AG*, No. 3:21-CV-00334 (SALM), 2022 WL 1223018, at *6 (D. Conn. Apr. 26, 2022) (quoting *Metso Minerals Inc. v. Powerscreen International Distribution Ltd.*, No. 06-cv-1446 (ADS) (ETB), 2007 WL 1875560, at *1 (E.D.N.Y. June 25, 2007)).

---

[14] Pursuant to Rule 26, "unless otherwise limited by court order," the scope of discovery includes:

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

**C. Discussion**

The Counterclaim Plaintiffs argue that the letters of request should be issued because they seek discovery that is relevant to their counterclaims, as well as their defenses to the Plaintiffs' claims. Doc. 214 at 14–17. The Court addresses each argument in turn.

*1. Relevance to the Counterclaims*

The Counterclaim Plaintiffs contend that the requested bank records are relevant to their counterclaims for fraud, conversion, unjust enrichment, and breach of fiduciary duty because they "will shed light on the financial transactions Dai and Khan Funds used to hide their self-dealing, theft, and/or unjust enrichment." Doc. 214 at 15. But insofar as the Court has dismissed these claims, they cannot support the Counterclaim Plaintiffs' request for discovery. Thus, to the extent that the motion is premised on the Counterclaim Plaintiffs' need for discovery to support these counterclaims, it must be denied as moot.

*2. Relevance to the Counterclaim Plaintiffs' Defenses*

The Counterclaim Plaintiffs also argue that the requested discovery is relevant to their defenses to the Plaintiffs' claims. Doc. 214 at 16. In support of this contention, they offer three arguments.

First, they contend that the letters of request should be issued because the requested discovery "is relevant to Dai's claims, including the alleged RICO enterprise and pattern, the existence of predicate acts tied to the Partnership funds, and any showing of causation, injury, and reasonable reliance." *Id.* at 17. But beyond this conclusory assertion, they do not explain how the bank records would bear on—or reasonably lead to matter that could bear on—any of the elements of the Plaintiffs' claims. Nor do they explain how the records would tend to prove or disprove any of the specific predicate acts alleged in support of the Plaintiffs' RICO claims.

In support of their contention that the requested bank records are relevant to the Plaintiffs' claims, the Counterclaim Plaintiffs instead note that the Partnership bank

records that they already possess allegedly "show that Dai began diverting Partnership funds to his entities as early as December 2015." *Id.* at 16. They then assert that, if the requested bank statements "reflect onward payments to Dai's own network or non-investment spending, that undercuts the [c]omplaint's core narrative that the [Counterclaim Plaintiffs] attempted to misuse the Partnership." *Id.* at 16–17. But, even if the bank records showed that *Dai* ultimately received the allegedly diverted funds, the Counterclaim Plaintiffs do not explain how that fact would be relevant to whether *they* "misused the Partnership" in way that undermines any of the Plaintiffs' claims.[15]

Nor does *Snider v. Lugli*, which the Counterclaim Plaintiffs cite to in support of this contention, demonstrate that this evidence would have that effect. *Snider v. Lugli*, No. 10 Civ. 4026 (JFB) (AKT), 2011 WL 5401860 (E.D.N.Y. Nov. 4, 2011). In that case, the plaintiff alleged that the defendants misappropriated and refused to return an investment that the plaintiff had entrusted to them in a corporate funds account. *Id.* at *3. In defense, the defendants asserted that the funds had been transferred to a third-party corporation's bank account through no fault of their own, before eventually being routed to the account of their former attorney's wife. *Id.* at *1–3. And to support this defense, the defendants sought the production of the wife's bank statements insofar as they included deposits from the third-party corporation's account. *Id.* at *1. Because the court agreed with the defendants that the bank statements could "implicate" the wife in the case against the defendants and "bear on [her husband's] culpability," it held that the bank statements were relevant to the case. *Id.* Here, by contrast, the Counterclaim Plaintiffs

[15] In their reply, the Counterclaim Plaintiffs suggest that, by asserting that the bank records will "undercut[] the [c]omplaint's core narrative that [they] attempted to misuse the Partnership," Doc. 214 at 16–17, they meant to argue that the "the account records will provide the best evidence . . . that a theft took place" and thus that "they had a legitimate legal right to file the Singapore lawsuit and attempt service on Dai in the United States." Doc. 222 at 11. Of course, the place to make this specific argument—which plainly differs from the Counterclaim Plaintiffs' earlier, vague assertion—was their opening brief. *See Anghel*, 912 F. Supp. 2d at 14 ("It is well settled in the Second Circuit that a party may not raise an argument for the first time in his reply brief."). But even if the Court considered this argument, it would not change the outcome because the Court has already held that the filing of the Singapore lawsuit could not itself support the Plaintiffs' RICO claims. *See* Doc. 146 at 43–44; Doc. 152 at 31–32.

are not seeking to use the bank records to implicate any party in misconduct in which they are alleged to have engaged; indeed, the transfers that the Counterclaim Plaintiffs seek to investigate stem from their own counterclaims against Dai. Thus, *Snider* is inapposite.

The Counterclaim Plaintiffs also argue, in a perfunctory manner, that the discovery is "relevant to the Nations Parties' affirmative defenses, including that Plaintiffs' claims are barred by their own fraudulent and/or willful misconduct, as well as unclean hands and other equitable defenses." Doc. 214 at 17. But the only support they offer for this argument is their equally conclusory assertion that "[t]he Letters of Request plainly satisfy the low threshold to establish relevancy within the scope of Rule 26(b)" and their citation to two cases as examples of instances in which courts have allowed discovery into bank records to support affirmative defenses. *Id.* But whether discovery is relevant depends on the facts and circumstances of a given case. *See WhitServe LLC v. Computer Packages, Inc.*, No. 3:06-CV-1935 (AVC), 2013 WL 6169280, at *2 (D. Conn. Nov. 22, 2013) ("[T]he precise boundaries of the Rule 26 'relevancy' will depend on the context of the particular action . . . ."); *Collens v. City of New York*, 222 F.R.D. 249, 252–53 (S.D.N.Y. 2004) ("[T]he determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action." (quoting Fed. R. Civ. P. 26 advisory committee notes to the 2000 amendments)). Thus, the fact that courts have found that bank records were relevant to affirmative defenses in *other* cases does not demonstrate that the bank records requested here would be relevant to the Counterclaim Plaintiffs' affirmative defenses in this case. Thus, the Counterclaim Plaintiffs have not shown that the requested discovery is relevant to their affirmative defenses.[16]

---

[16] Arguably, the Counterclaim Plaintiffs have waived this argument by failing to develop it in any more than a perfunctory manner. *See Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK) (JCF), 2013 WL 4045326, at *1 n.3 (S.D.N.Y. Aug. 9, 2013). In any event, they have failed to meet their burden to establish that the bank records are relevant to their affirmative defenses for the reasons just explained.

The Counterclaim Plaintiffs finally assert, in a footnote, that the discovery "is also relevant for impeachment purposes" "[t]o the extent" that it "reveals factual inconsistencies in the Amended Complaint." Doc. 214 at 17 n.3. But the Counterclaim Plaintiffs have waived this argument insofar as they have relegated it to a footnote. *See Greenfield*, 831 F.3d at 118 n.9 (2d Cir. 2016) (noting that a party waives an argument by advancing it only in a footnote). In addition, the Counterclaim Plaintiffs fail to identify any particular allegations in the complaint that the requested records could be used to impeach; they simply speculate that the bank records may reveal "factual inconsistences" with unspecified allegations. But without further detail, the Court cannot evaluate whether the requested records could, in fact, contradict any allegation in the complaint. Thus, the Counterclaim Plaintiffs have not shown that the existence of impeachment evidence is non-speculative.[17] *See Lemanik, S.A. v. McKinley Allsopp, Inc.*, 125 F.R.D. 602, 610 (S.D.N.Y. 1989) (requiring "some factual basis for believing that impeaching evidence will be revealed by the discovery sought" and concluding that the movant's "conclusory" arguments "d[id] not satisfy that requirement"); *see also Deutsche Bank Securities Inc. v. Kingate Global Fund Ltd.*, No. 19 Civ. 10823 (ER), 2022 WL 3644822, at *5 (S.D.N.Y. Aug. 24, 2022) ("The party seeking discovery bears the burden of initially showing relevance, and as such, he or she must make a prima facie showing that the discovery sought is more than merely a fishing expedition." (citation omitted)).

---

[17] Even if the Counterclaim Plaintiffs had shown that the requested records could be used as impeachment evidence, the Court would still have to consider whether their request is proportional to the needs of the case. *See Hong Kong Brown International Trade Co. v. FS Medical Supplies LLC*, No. 26-mc-104 (DEH), 2026 WL 948241, at *5 (S.D.N.Y. Apr. 8, 2026) ("Impeachment evidence may, in some cases, be relevant. However, the court must also consider whether discovery related to gathering impeachment evidence is proportional to the needs of the case." (citation modified)). But the Counterclaim Plaintiffs' only proportionality argument is similarly conclusory: they contend that the requests "are narrowly tailored," in that they "identify[] the specific bank account numbers and mak[e] limited requests for documents highly relevant to the [the Counterclaim Plaintiffs'] defenses and Counterclaims." Doc. 214 at 18. This assertion is also belied by the face of the requests, which seek discovery regarding "all accounts" associated with the three entities, "including *but not limited to*" the specifically identified accounts. *See, e.g.*, Doc. 213-1 at 14 (emphasis added). Nor do the Counterclaim Plaintiffs explain why this sweeping request is proportional to the needs of the case.

At bottom, relevance, while broadly defined, is not unlimited. And the Counterclaim Plaintiffs, as the parties requesting discovery, bear the burden of demonstrating relevance in the first instance. Because the Counterclaim Plaintiffs have not met their burden, the Court will not issue the letters of request.

## III. CONCLUSION

For the reasons set forth above, the motions for reconsideration and the issuance of letters of request are therefore DENIED. The Clerk of the Court is respectfully directed to terminate the motions, Docs. 212, 274.

It is SO ORDERED.

Dated: September 8, 2026
New York, New York

EDGARDO RAMOS, U.S.D.J.